UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ZEPEDA SANCHEZ, on behalf of himself, FLSA Collective Plaintiffs, and the Class<br><br>Plaintiff,<br><br>v.<br><br>ARSH LANDMARK GENERAL CONSTRUCTION CORP., GARIB TANEJA, and MUHAMMAD SABIR,<br><br>Defendants. | CIVIL ACTION NO. 25 Civ. 632 (DEH) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.INTRODUCTION

Plaintiff Miguel Zepeda Sanchez ("Sanchez") filed this putative class and collective action seeking to recover unpaid overtime wages and related relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, §§ 190 et seq. ("NYLL"), against his former employers, Defendants Arsh Landmark General Construction Corp. ("Arsh"), and Garib Taneja ("Taneja", with Arsh, "Defendants").  (Dkt. No. 1 (the "Complaint")).[1]  Following limited discovery, Sanchez now moves for conditional certification of a collective action and related relief under 29 U.S.C. § 216(b).  (Dkt. No. 48 (the "Motion")).  For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] The Complaint also named as a Defendant Muhammad Sabir, against whom Sanchez has since dismissed all claims without prejudice.  (Dkt. No. 15).

1

**II.BACKGROUND**[2]

A.  **Factual Background**[3]

1.  **Defendants' Business and Pay Practices**

Arsh is a construction company that specializes in "building brick walls" at residential and commercial sites around New York City.  (Dkt. Nos. 50-2 at 1–2 ¶ 3; 69-4 at 8).  At any given time, Arsh employs fourteen or fifteen people, four or five of whom are bricklayers.  (Dkt. No. 69-4 at 8, 15).  Taneja testified that he "sets the wage policies for" Arsh's employees, all of whom are "subject to the same wage policies[.]"  (Id. at 8).  Taneja further testified that Arsh employees are paid without any accompanying pay stub.  (Id. at 15).

2.  **Sanchez's Employment**

From July 2022 until January 2024, Sanchez worked for Defendants "loading and unloading trucks, laying concrete, demolishing commercial buildings, removing garbage and debris from job sites, remediating asbestos, and assisting with other general construction tasks as needed."  (Dkt. No. 50-2 at 1 ¶ 2).  Defendants hired Sanchez because he "knew how to do brickwork" and categorized him as a bricklayer.  (Dkt. Nos. 69-1 at 7; 77 at 17:24–18:3).  Sanchez was assigned to a different work location each day, and at each work site, to a group of employees that performed the same work for that day.  (Dkt. No. 50-2 at 2 ¶ 4).  He worked six

---

[2] In deciding the Motion, we have considered: (1) the Complaint (Dkt. No. 1); (2) the answer (Dkt. No. 34 (the "Answer")); (3) Sanchez's Memorandum of Law (Dkt. No. 49); (4) the Declaration of C.K. Lee and exhibits annexed thereto (Dkt. Nos. 50–50-5); (5) Defendants' Memorandum of Law (Dkt. No. 60); (6) the Declaration of Adam P. Grogan and exhibits annexed thereto (Dkt. Nos. 60-1–60-4); (6) Sanchez's Reply Memorandum of Law (Dkt. No. 68); (7) the Declaration of Chenyun Ma and exhibits annexed thereto (Dkt. Nos. 69–69-5); (8) Defendants' Sur-Reply (Dkt. No. 73); (9) Defendants' February 3, 2026 letter and additional exhibit (Dkt. Nos. 75; 75-1); and (10) Sanchez's letter response to the additional exhibit. (Dkt. No. 76).

[3] Defendants dispute Sanchez's allegations and deny any liability.  (Dkt. No. 34).  This factual summary does not represent findings of fact for any future proceeding.

days per week, Monday through Saturday, from 8:00 a.m. to 5:00 p.m., for a total of 54 hours per week, but he "frequently worked" longer than his scheduled hours.  (Id. at 2–3 ¶¶ 7, 9).  Defendants paid Sanchez biweekly at a fixed rate of $1,440.00 for each week he worked, regardless of how many hours he worked.  (Id. at 3–4 ¶¶ 8, 12).  He "often" received his pay, in cash and checks, five to ten days late.  (Id. at 4 ¶¶ 11, 13).  He did not receive any pay notices when he was hired or wage statements with his pay.  (Id. at 4–5 ¶¶ 15–16).  When Sanchez complained to Defendants about the amount or timing of his wages, Defendants "would threaten [him] with termination[.]"  (Id. at 4 ¶ 14).

During his employment, Sanchez spoke with members of his work group, including other laborers Vincente, Jerson, and Carlos, and Billy, a plumber/electrician, about Defendants' wage and hour practices.  (Dkt. No. 50-2 at 2 ¶¶ 5–6).  Sanchez observed other laborers work similar schedules, including long hours without overtime, and receive similar fixed weekly salaries.  (Id. at 2–3 ¶¶ 7–8).  He "regularly complained" about his wages to Vincente, Carlos, and Jerson, who also "complained that they also did not get paid for their overtime hours[]" and received their wages late.  (Id. at 3–4 ¶¶ 10, 13).  They did not receive wage notices or wage statements and received "similar threats of termination when approaching Defendants with complaints." (Id. at 4–5 ¶¶ 14–16).

### B.  Procedural Background

On January 22, 2025, Sanchez filed the Complaint.  (Dkt. No. 1).  After Defendants failed to timely respond to the Complaint, on May 22, 2025, the Clerk of the Court entered a certificate of default, and on June 9, 2025, Sanchez filed a motion for default judgment (the "Default Motion").  (Dkt. Nos. 18–19; 21–25).  The Honorable Dale E. Ho ordered Defendants to show

cause at a hearing on June 24, 2025 why default judgment should not be entered (the "Hearing")). (Dkt. No. 26). After Defendants, through counsel, appeared at the Hearing and the parties proposed means to advance the litigation, Judge Ho terminated the Default Motion and extended Defendants' deadline to respond to the Complaint. (Dkt. Nos. 28–29; 31–32; Dkt. entry dated June 24, 2025). On July 22, 2025, Defendants filed their Answer. (Dkt. No. 34).

On September 3, 2025, the Court held an initial case management conference and entered a case management plan, which set a fact discovery deadline of June 3, 2026. (Dkt. No. 40; Dkt. entry dated Sept. 3, 2025). Since then, the Court has held four conferences with the parties to address various discovery disputes. (Dkt. Nos. 37; 43–44; 51; 53; 57–58; 65; 72; 77).

On November 17, 2025, Sanchez filed the Motion, (Dkt. Nos. 48–50), which seeks certification of a collective action consisting of "all current and former non-exempt employees, including laborers, scaffolders, demolition workers, plumbers, electricians, and construction workers, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint[]" (the "Proposed Collective"). (Dkt. No. 48-1 at 2). During briefing on the Motion, the Court granted Sanchez's motion to compel Defendants to produce payroll records concerning bricklayers employed within six years of the Complaint, emails concerning Sanchez and other bricklayers, and employment and wage policy documents. (Dkt. Nos. 47; 56). On December 23, 2025, Defendants filed their opposition to the Motion. (Dkt. Nos. 60–60-4 (the "Opposition")). On January 12, 2026, Sanchez filed his reply, which incorporated additional documents that Defendants had recently produced. (Dkt. Nos. 68–69-5 (the "Reply")). Because Sanchez submitted additional documents with its Reply, the Court granted Defendants' request

to file a sur-reply limited to the new evidence or arguments in the Reply, (Dkt. Nos. 57; 67), which they filed on January 26, 2026.  (Dkt. No. 73).

On February 2, 2026, the Court held a conference to discuss the Motion.  (Dkt. Nos. 65; 72).  During the conference, Defendants represented that they had produced payroll records for bricklayers that they did not submit in connection with their Opposition.  (Dkt. No. 77 at 13:8–26:16 (the "Bricklayer Documents")).  Deeming these records pertinent to the Motion, the Court ordered Defendants to file the Bricklayer Documents and permitted Sanchez to file a brief response.  (Dkt. No. 74 at 1 ¶ 2; 77 at 26:4–16).  Defendants having now filed the Bricklayer Documents and Sanchez having filed his response, the Court deems briefing on the Motion complete.  (Dkt. Nos. 75; 75-1; 76).

### III. DISCUSSION

#### A.  Legal Standard

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . .
> by any one or more employees for and in behalf of himself or themselves and
> other employees similarly situated.  No employee shall be a party plaintiff to any
> such action unless he gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed Section 216(b) to grant district courts the authority to order that notice be given to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic

Lab'ys, Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of [Section] 16(b) of the [FLSA], 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").[4]  Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, the FLSA does not contain a certification mechanism.  See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id. The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action.  See Myers, 624 F.3d at 554–55.  First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred.  Id. at 555; see Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  At this first stage, the case has not typically "had the benefit of full discovery[,]" and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to

---

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

potential opt-in plaintiffs vis-à-vis the defendants' allegedly unlawful employment practices. Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016); see Almonte v. Marina Ice Cream Corp., No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1 (S.D.N.Y. Dec. 8, 2016).  "For similar reasons, courts do 'not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations' at the first stage."   Korenblum, 195 F. Supp. 3d at 480 (quoting In re Penthouse Exec. Club Comp. Litig., No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

At the second step, on a more complete record following discovery, the district court determines whether a "collective action" may proceed based on the named plaintiff having shown that the plaintiffs who opted in are actually "similarly situated" to him.  Myers, 624 F.3d at 555.  If the court is not convinced, it may "de-certif[y]" the action and dismiss the opt-in plaintiffs' claims without prejudice.  Id.

At the first step, a plaintiff's "burden of proof is low, [but] it is not non-existent — certification is not automatic."  Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012); see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory").  A plaintiff cannot satisfy his burden at the conditional certification stage by "unsupported assertions," Myers, 624 F.3d at 555, or with "conclusory allegation[s.]" Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006). "Evidence is required."  Peralta v. CB Hosp. & Events, LLC, No. 22 Civ. 10805 (GHW) (BCM), 2024 WL 916523, at *4 (S.D.N.Y. Mar. 4, 2024).

Where the parties have completed, or substantially completed, conditional collective certification discovery, courts in this District have applied "a modest 'plus'" standard of review to motions under FLSA Section 216(b). Korenblum, 195 F. Supp. 3d at 482 (quoting Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)); see Brown v. Barnes & Noble, Inc., No. 16 Civ. 7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (finding that "modest plus" approach "made eminent sense" where parties had completed six months of discovery "targeted to conditional certification"). In applying the "modest plus" standard of review, courts "look beyond the pleadings and affidavits submitted by [p]laintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" Korenblum, 195 F. Supp. 3d at 482 (quoting Creely, 789 F. Supp. 2d at 826). In reviewing the parties' evidence, "the Court still will not decide the ultimate merits of the case or issues better suited for a decertification motion." Korenblum, 195 F. Supp. 3d at 482. Rather, the Court continues to assess whether "it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs — in other words, that [p]laintiffs have, through discovery, 'advanced the ball down the field.'" Id. (quoting Creely, 789 F. Supp. 2d at 827).

Notwithstanding the Second Circuit's precedent and the decision in West I (defined below), Defendants ask the Court to apply a heightened standard adopted by the Fifth and Sixth Circuits, which requires a plaintiff to show a "strong likelihood" that putative opt-in plaintiffs are similarly situated to the named plaintiffs. (Dkt. No. 60 at 7–8 (citing Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021) and Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003 (6th Cir. 2023)). This Court has previously declined to do so, see West v. LaserShip,

Inc., No. 21 Civ. 5382 (LTS) (SLC), 2024 WL 1461403, at *6 (S.D.N.Y. Apr. 4, 2024) ("West I"), and

Defendants do not persuade us to chart a different course here.  Rather, because the parties here

engaged in several months of discovery, including document production and depositions of

Sanchez and Taneja, we apply the Second Circuit's "modest plus" standard.  See Brown, 2018 WL

3105068, at *18 (applying modest-plus standard to plaintiffs' renewed collective certification

motion that followed six months of targeted discovery).

### B.  Application

#### 1.  The Court Will Certify a Narrower Collective.

Applying the "modest plus" standard, the Court finds that Sanchez has met his burden to

show that he is similarly situated to other non-exempt[5] employees, including bricklayers,

laborers, helpers, and other construction workers, whom Defendants employed on or after

January 22, 2022 (the "Collective"), i.e., three years before the filing of the Complaint, a shorter

period than the Proposed Collective.  Therefore, conditional certification of this more limited

Collective than the Proposed Collective is warranted.

As we have explained, "[a]t this stage of the litigation, [p]laintiffs need only proffer

substantial allegations of a factual nexus between them and potential opt-in plaintiffs with regard

to [an] FLSA violation."  West I, 2024 WL 1461403, at *7.  "The FLSA [] require[s] employers to

pay employees one and one-half times their regular wage for any hours worked over forty in a

week.  Williams v. Bier Int'l, LLC, No. 14 Civ. 3894 (LTS) (JCF), 2015 WL 4461668, at *2 (S.D.N.Y.

---

[5] While Defendants dispute the categories of employees that could be included in any collective, they do not contend that any exemption applies.  (See Dkt. No. 60-4 at 2 (Defendants' revised proposed notice including "non-exempt bricklayer[s]").  See Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 160 (S.D.N.Y. 2014) ("[T]he employer bears the burden of proving that [an exemption] appl[ies].").

July 21, 2015); see 29 U.S.C. § 207(a)(1). "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated[.]" Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). The plaintiff may meet this burden by offering "estimates based on his own recollection." Id. at 362.

Here, Sanchez has attested that he worked more than 40 hours per week but was paid at a fixed rate of $1,440.00 regardless of how many hours he worked, was often paid late in a combination of cash and check, and did not receive wage notices or wage statements. (Dkt. No. 50-2 at 2–4 ¶¶ 7–13). Sanchez provides the names of other co-workers who performed similar tasks and experienced the same working and wage conditions. (Dkt. Nos. 50-2 at 2–5 ¶¶ 5, 8–16; 69-1 at 13, 18). Apart from his own testimony and observations of named co-workers, Sanchez has also submitted Defendants' payroll records, which show other employees being paid, partially by check, a flat weekly salary without regard to the number of hours worked, as well as Defendants' acknowledgment that they did not document or track employees' hours. (Dkt. Nos. 50-4 at 7; 69-3). Sanchez's declaration and testimony, which he supports with "at least some corroborating documentation, satisfies" his "modest burden at the conditional approval stage that he is similarly situated" to other members of the Collective with respect to Defendants' alleged failure to pay overtime under the FLSA. Curry v. P&G Auditors & Consultants, LLC, No. 20 Civ. 6985 (LTS) (SLC), 2021 WL 2414968, at *9 (S.D.N.Y. June 14, 2021) (citation modified).

Apart from the evidence that Sanchez has offered, Taneja admitted that all of Arsh's employees — of which there are only "14 to 15" at any given time — work on construction jobs involving bricks and are subject to the same wage policies, which Taneja sets. (Dkt. No. 69-4 at 8–9). This provides further corroboration for the inference that the members of the Collective

are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Defendants' arguments that Sanchez has not shown that Defendants had a common plan or policy requiring all employees to work over 40 hours per week without overtime in violation of the FLSA, (Dkt. Nos. 60 at 14–15; 73 at 10–11), are arguments directed to the merits of Sanchez's claims, which the Court may not weigh at this time. See West v. LaserShip, Inc., No. 21 Civ. 5382 (LTS) (SLC), 2025 WL 2555496, at *11 (S.D.N.Y. Sept. 5, 2025) ("West II") (in certifying collective action, declining to consider defendants' merits-based challenges to plaintiffs' claims); Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) ("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims."); Curry, 2021 WL 2414968, at *10 (collecting cases explaining that court may not consider merits of FLSA claims at conditional certification stage). To be sure, Defendants' liability is not a foregone conclusion, and Defendants have pointed out possible discrepancies in Sanchez's statements about the number of hours he worked and raised colorable questions about his credibility. (Dkt. No. 60 at 13; 73 at 6–7). At this time, however, we may not "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." Hamadou, 915 F. Supp. 2d at 662; see Hoffman-La Roche, 493 U.S. at 174 (explaining that district court, at collective certification stage, "must take care to avoid even the appearance of judicial endorsement of the merits of the action"). Ultimately, Defendants' arguments would require us to resolve factual disputes that relate to the merits of Sanchez's claims, and thus fail to preclude collective certification. See Fasanelli v. Heartland Brewery, Inc.,

516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (finding that defendants' fact-based challenges were "misplaced" and did not preclude certification of collective).

Finally, the Court declines Sanchez's request to include in the Collective employees who worked for Defendants within six years of the filing of the Complaint.  (Dkt. No. 48-1).  "The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation." Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 47 (S.D.N.Y. 2018) (citing 29 U.S.C. § 255(a)).  Courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, rather than the date of the mailing of the notice, "with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011).  Accordingly, the Court limits the Collective to Defendants' employees who worked on or after January 22, 2022.  See West II, 2025 WL 2555496, at *11 (limiting collective membership to employees who worked within three years of complaint filing); Curry, 2021 WL 2414968, at *10 (same); Sanchez v. Salsa Con Fuego, Inc., No. 16 Civ. 473 (RJS) (BCM), 2016 WL 4533574, at *3 (S.D.N.Y. Aug. 24, 2016) (same); see also Gorey v. Manheim Servs. Corp., No. 10 Civ. 1132 (JSG), 2010 WL 5866258, at *5 (S.D.N.Y. Nov. 10, 2010) (noting that "it is within the district court's power to limit the scope of the proposed class in a collective action.").

### 2.  The Notice and Consent Form Must Be Revised.

#### a.  Content of the Notice

For the reasons set forth in the preceding section, (see § III.B.1, supra), the Court authorizes notice to be sent to the Collective, comprised of all non-exempt employees, including

all bricklayers, laborers, helpers, and other construction workers, whom Defendants employed on or after January 22, 2022 to the present.

Defendants also ask that the Proposed Notice be revised to (i) provide that the "Consent to Sue" forms be returned to the Clerk of the Court rather than Sanchez's counsel, the Lee Litigation Group, PLLC (the "Lee Firm"), and (ii) include contact information for Defendants' counsel.  (Dkt. Nos. 60 at 16–17; 60-4 at 3).  Sanchez objects to both revisions.  (Dkt. No. 68 at 13–15).

As to Defendants' first proposed revision, Sanchez correctly points out that "[c]ourts in this Circuit have found that so long as the notice makes clear that [p]laintiffs can retain their own counsel if they choose, it is 'acceptable and less cumbersome' for opt-in consent forms to be returned directly to plaintiffs' counsel."  (Dkt. No. 68 at 14 (quoting Banjong v. Limleartvate, No. 22 Civ. 4849 (RER), 2023 WL 3663020, at *4 (E.D.N.Y. May 25, 2023)).  The Proposed Notice here does just that, informing opt-in plaintiffs: "You are not required to have [the Lee Firm] represent you.  If you want your own attorney to represent you in this lawsuit, arrangements would have to be made for that attorney's fees and expenses, and the arrangements could be the same as [the Lee Firm's]."  (Dkt. No. 50-1 at 3).  Because the Proposed Notice "make[s] clear that [p]laintiffs may retain their own counsel and thus mitigates any concern of confusion[,]" Banjong, 2023 WL 3663020, at *4, we reject Defendants' modification and grant Sanchez's request that opt-in consent forms be returned to the Lee Firm.

As to Defendants' second proposed revision, Defendants correctly note that "[c]ourts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of [a] collective action[.]"  (Dkt. No. 60 at 16–17 (quoting Slamna v. API Rest. Corp., No. 12 Civ.

13

757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) (collecting cases)). We thus grant

Defendants' request to include their counsel's contact information, but with clarification that

they represent Defendants, not Sanchez or the Collective, by the following modifications

(indicated in <u>underline</u>) on page 3 of the Proposed Notice:

> You can obtain more information about this lawsuit by contacting <u>Plaintiffs'</u> <u>counsel,</u> C.K. Lee, Esq., <u>or Defendants' counsel, the Bell Law Group, PLLC</u>:
>
> <u>Plaintiffs' counsel:</u>
>
> C.K. Lee, Esq.
> Lee Litigation Group PLLC
> 148 West 24th Street, 8th Floor
> New York, NY  10011
> Tel: (212) 465-1180
> Fax: (212) 465-1181
> Email: cklee@leelitigation.com
>
> <u>Defendants' counsel:</u>
>
> <u>Paul A. Bartels, Esq.</u>
> <u>Bell Law Group, PLLC</u>
> <u>116 Jackson Avenue</u>
> <u>Syosset, NY 11791</u>
> <u>Tel: (516) 280-3008</u>
> <u>Email: Paul@BellLG.com</u>

The parties shall meet and confer to revise the Proposed Notice (Dkt. Nos. 50-1; 60-4) to

narrow its scope and conform its language to the instructions in this Opinion and Order (the

"Revised Notice").

### b.  Distribution Methods

Sanchez seeks permission to distribute the Revised Notice "as authorized by the FLSA"

and by posting it "in Defendants' place of business where" members of the Collective are

employed.  (Dkt. No. 48-1 at 2–3).  Defendants do not contest or address the manner of

14

distribution of notice to the Collective. (Dkt. Nos. 60; 73). We infer from the record that Defendants maintained a principal office in Richmond Hill, New York, from which Sanchez and other members of the Collective were given assignments to construction sites. (Dkt. Nos. 50-2 at 1–2 ¶¶ 2–4; 50-3; 75-1). Accordingly, we will require Defendants to post the Revised Notice in its principal office in Richmond Hill in a location visible to members of the Collective. See Hamadou, 915 F. Supp. 2d at 669 (requiring notice to be posted in locations where members of the collective worked).

In addition, we find that disseminating the Revised Notice by the additional methods of regular mail, email and text message is appropriate. See West II, 2025 WL 2555496, at *12 (collecting cases authorizing notice distribution by mail, email, and text message); Curry, 2021 WL 2414968, at *13 (same).

### c. Contact Information

Sanchez asks the Court to require Defendants, within ten days, to disclose with respect to members of the Collective, names, titles, compensation rates, dates of employment, last known mailing address(es), email address(es), and telephone number(s) (the "Contact Information"). (Dkt. No. 49 at 20). Defendants object to providing the Contact Information "to the extent [that the] [M]otion is denied," and if the Motion is granted, that Sanchez and the Lee Firm receive the Contact Information "under an obligation of confidentiality and solely to be used for the purpose of sending notice of the pendency of this action and not any other form of solicitation or contact." (Dkt. No. 60 at 18–19).

"As is typical following a grant of conditional certification of a[n] FLSA collective," we will order Defendants to provide within 15 days of this Opinion and Order a computer-readable (e.g.

Excel, Word, or searchable PDF) list containing the Contact Information. Curry, 2021 WL 2414968, at *13 (collecting cases ordering disclosure of contact information to facilitate distribution of notice); see West II, 2025 WL 2555496, at *12 (requiring production of contact information to the extent not already produced).

### 3. Equitable Tolling is Not Warranted.

Sanchez asks the Court to toll the statute of limitations for all potential opt-in plaintiffs until notice is distributed. (Dkt. Nos. 48-1 at 3; 49 at 20–21). Defendants oppose that request. (Dkt. No. 60 at 19–21).

As noted above, (see § III.B.1, supra), the statute of limitations for overtime claims under the FLSA "is two years unless the violation was willful, in which case the limitations period is three years." Curry, 2021 WL 2414968, at *14. The "statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." Id.

"The doctrine of equitable tolling allows a court to extend a statute of limitations 'on a case-by-case basis to prevent inequity.'" Knox v. John Varvatos Enters. Inc., 282 F. Supp. 3d 644, 657 (S.D.N.Y. 2017) (quoting Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000)). In this Circuit,

> when determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003), as amended (2d Cir. July 29, 2003). "Equitable tolling is appropriate only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising

his rights." Garcia v. Chipotle Mexican Grill, Inc., No. 16 Civ. 601 (ER), 2016 WL 6561302, at *10 (S.D.N.Y. Nov. 4, 2016). In the FLSA context, "[a]n extraordinary circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from the plaintiff the existence of the cause of action." Whitehorn, 767 F. Supp. 2d at 449.

Here, Sanchez offers nothing more than a conclusory request for equitable tolling and fails to offer any evidence "that any opt-in plaintiffs have met the first 'diligence prong' of the test in the Second Circuit." West II, 2025 WL 2555496, at *13 (quoting Knox, 282 F. Supp. 3d at 659). For us to consider applying equitable tolling, there must be evidence of the "diligence of a plaintiff who is seeking the application of the doctrine." Knox, 282 F. Supp. 3d at 658. Sanchez has "made no showing that any potential opt-in plaintiffs have 'acted with reasonable diligence' to pursue their claims as would justify equitable tolling at this time." West II, 2025 WL 2555496, at *13 (quoting Zerilli-Edelglass, 333 F.3d at 81). Similarly, he has not offered any evidence that Defendants concealed employees' right to overtime pay or that a reasonably prudent employee would not have known of their right to receive overtime pay for hours worked over 40 per week. See id. His request for equitable tolling appears to rest on nothing more than "the assumption that potential plaintiffs have been, and will remain, unaware of their rights unless and until they receive notice of this lawsuit[,]" which is insufficient to justify equitable tolling. Hintergerger v. Cath. Health Sys., No. 08 Civ. 380S, 2009 WL 3464134 (WMS), at *15 (W.D.N.Y. Oct. 21, 2009).

Given the absence of potential opt-in plaintiffs' reasonable diligence or of extraordinary circumstances and given the Court's authorization of distribution of the Revised Notice to the Collective, we find that "determination as to the timeliness of each future plaintiff's action is

better reserved for a future proceeding." <u>Whitehorn</u>, 767 F. Supp. 2d at 450. Accordingly, Sanchez's request for equitable tolling is **DENIED WITHOUT PREJUDICE** and "with the understanding that individual plaintiffs may seek such tolling upon demonstrating its applicability" to that plaintiff's circumstances. <u>Id.</u>; <u>accord</u> <u>West II</u>, 2025 WL 2555496, at *13.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Pursuant to 29 U.S.C. § 216(b), the Court conditionally certifies this action as a collective action comprised of the Collective, <u>i.e.</u>, all non-exempt employees, including all bricklayers, laborers, helpers, and other construction workers, whom Defendants employed on or after January 22, 2022 to the present.

(2) The parties shall promptly meet and confer regarding Court-ordered changes to the Proposed Notice and by **March 11, 2026**, submit the Revised Notice for the Court's review and approval.

(3) By **March 11, 2026**, Defendants shall produce the Contact Information for members of the Collective.

(4) Once approved by the Court, the Revised Notice and consent form shall be (a) mailed, emailed and/or sent by text message to all members of the Collective, who must opt-in to this action within 60 days of the date of distribution; and (b) posted in the Richmond Hill, New York office in a location visible to employees who are members of the Collective.

(5) Sanchez's request for equitable tolling is **DENIED WITHOUT PREJUDICE** to any individual plaintiff's ability to request tolling on a showing that it applies to that plaintiff's particular circumstances.

The Clerk of the Court is respectfully directed to close Dkt. No. 48.

Dated:          New York, New York
                February 24, 2026

                                        SO ORDERED.

                                        _____
                                        SARAH L. CAVE
                                        United States Magistrate Judge

19